IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2017

## IN RE ETHAN B.[1]

**Appeal from the Chancery Court for White County**
**No. 2016-CV-60     Ronald Thurman, Chancellor**

_____

### No. M2017-00967-COA-R3-PT

_____

A mother appeals the termination of parental rights to her son on the grounds of abandonment by willful failure to visit and willful failure to support.  Mother appeals, arguing that the termination of her rights is not supported by the record.  After a thorough review, we conclude that the proof does not clearly and convincingly establish that Mother willfully failed to visit or support the child.  We reverse the judgment of the trial court and dismiss the petition for termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jonathan T. Hutson, Sparta, Tennessee, for the appellant, Sabrina B.

Michael H. Knowlton, Cookeville, Tennessee, for the appellees, Charles B. and Unika B.

Billy K. Tollison, III, McMinnville, Tennessee, for the appellee, Christopher B.[2]

## OPINION

This is an appeal of the termination of a Mother's parental rights to her son.  Ethan B. was born in October 2011 to Sabrina B. and Christopher B.  Sabrina B. ("Mother") left

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] Christopher B. is the father of the child at issue in this appeal; he has not appealed the termination of his rights or otherwise participated in this appeal.

Ethan in the care of her friend Unika B. and her husband Charles B. (together, "Petitioners") in September 2013 before she was incarcerated.[3]  Around the same time, the Department of Children's Services ("DCS") received a referral of environmental neglect and drug-exposed child relating to Ethan.  After having some difficulty locating Ethan, DCS found him in the safekeeping of Unika B.  DCS thereafter filed a petition on January 7, 2014, seeking to have Ethan adjudicated dependent and neglected and for the court "to award temporary legal custody of the child to DCS/Unika [B.]"  The court entered a "Kinship Protective Custody Order" that day, granting Unika B. custody of Ethan and ordering DCS to directly supervise all contact between him and his parents. On January 30, 2014, Father, Mother, Unika B., a DCS family services worker, and the guardian *ad litem* created a non-custodial permanency plan for Ethan.  On June 12, 2014, the court entered an order which recited that Mother and Father stipulated that Ethan was dependent and neglected; adjudicated Ethan to be dependent and neglected; held that the adjudication was necessary because "[t]he parents were incarcerated and unable to care for the child"; and ordered that "custody shall remain with Unika [B.]."  In August 2014, following her release from incarceration and her willingness to follow the recommendations of the parenting plan, Mother was given a trial home visitation.[4]  The home visitation was terminated in November 2014 upon DCS's motion when Mother failed a drug test.[5]  Mother was apparently re-incarcerated at some point following the

---

[3] In a related proceeding to have Ethan adjudicated dependent and neglected, it was alleged that Mother, who was on probation at the time, was arrested following an incident at her home in which Father had fired a gun at a third party.

[4] The "Agreed Order to Begin Unsupervised Visitation for the Mother" recites that supervised visitation was appropriate for the following reasons:

> Sabrina B[.] has made sufficient progress in that she has completed an A&D assessment, A&D counseling, she is compliant with her mental health treatment, she has obtained employment, she has a stable home with her parents, she tested negative on a hair follicle drug screen on July 10, 2014, she has tested negative on her urine drug screens, and she has been visiting Ethan regularly[.]

[5] The motion filed by DCS alleged:

> The State of Tennessee, Department of Children's Services, moves that the trial home visit of Ethan B[.] in the home of his mother, Sabrina B[.]. . . be terminated due to the mother admitting on November 12, 2014 that she needed bleach to bleach her hair and her body so that she could pass a drug screen. The case manager was present when Sabrina's parents . . . received a phone call from Sabrina. The call was put on speaker and the case manager heard the mother ask her parents to provide her with bleach. The mother also admitted to her father . . . that she had been using methamphetamine, cocaine, shooting up morphine, and using pot.

termination of the home visitation and remained incarcerated through October 9, 2015.[6] Father was incarcerated through December 22, 2015.

On April 25, 2016, Petitioners filed the petition to terminate the parental rights of Sabrina B. and Christopher B. and to adopt Ethan, on the grounds of abandonment by failure to support, failure to visit, failure to establish a suitable home, and by engaging in conduct that exhibited wanton disregard for the welfare of Ethan B. A trial was conducted on February 23, 2017, at which the following witnesses testified: Robert Kelsie, Mother's drug and alcohol counselor; Unika and Charles B.; Donald H., Unika's father; and Teresa Jackson, DCS case manager.

The court entered an Amended Judgment on April 11,[7] terminating Mother's and Father's parental rights on the grounds of abandonment by willful failure to visit and support; the court dismissed the other grounds alleged in the petition. Mother appeals the termination of her rights.

## I. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Serv. v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be

---

[Sabrina's Father] reported to CM Winningham that the mother had only stayed at the home one (1) to two (2) days in the past two (2) weeks despite being on house arrest. [Mother's parents] did not know where the mother had been staying. The mother submitted to a urine drug screen on November 12, 2014 and tested positive for methamphetamine, amphetamine, and ecstasy.

The circumstances pose an immediate threat to the child's safety or emotional well-being to the extent that a delay for a hearing would be likely to result in severe or irreparable harm.

There is no less drastic alternative to removal which could reasonably and adequately protect the child's health and safety pending a hearing.

[6] The record contains a stipulation filed with the court on February 23, 2017, which states that Mother "was released from custody on October 9, 2015, and she has not been incarcerated since October 9, 2015."

[7] The initial order terminating Mother's rights is not present in the record, and it is not clear from the record what, if any, differences there are in that order and the Amended Order that is being appealed.

3

terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766–69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.* In this regard, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

## II. ANALYSIS

Abandonment is identified as a ground for termination in Tennessee Code Annotated section 36-1-116(g)(1); pertinent to this appeal, "abandonment" is defined at section 36-1-102(1)(A) as:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> > (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians

of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A). In this case, because the petition for termination was filed on April 25, 2016, at which time Mother was not incarcerated, the relevant time period was December 24, 2015 to April 24, 2016.

## A. Willful Failure to Visit

The trial court's holding with respect to this ground reads as follows:

The first ground for termination is abandonment by willfully failing to visit with the child for the four months preceding the filing of the petition (T.C.A. § 36-1-102). The record is clearly undisputed that neither [Mother] nor [Father] have had any contact with the child in the four months preceding the filing of the Petition to Terminate Parental Rights. In fact the record also clearly establishes that the last time [Mother] saw Ethan was the day DCS terminated her trial home visit on November 2014. [Father] last saw Ethan in August 2013 when [Mother] gave Ethan to Ms. B[.] prior to his incarceration. The stipulations filed by the parties establish that [Mother] was released from custody on October 9, 2015 and [Father] was released on December 22, 2015. The Court finds by clear and convincing evidence that there was nothing, which prevented either of the Respondents from visiting with Ethan. There is no proof in the record that the Petitioners in any way blocked or thwarted any visitation. There is no evidence in the record that the Respondents did anything to attempt to visit during the four months preceding the filing of the petition. There is no proof that they were sick or they were disabled in any fashion or form. The Court finds by clear and convincing evidence that abandonment has occurred by the Respondents willfully failing to visit with the child in the four (4) months preceding the filing of the petition.

Mother does not dispute that she did not visit Ethan during the four months preceding the filing of the petition. Rather, Mother argues on appeal that there is no evidence to support a finding that her failure to visit him was willful.

In *In re Audrey S.*, this Court examined the concept of willfulness and observed:

5

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

182 S.W.3d 838, 864 (Tenn. Ct. App. 2005).

Petitioners bore the burden at trial of establishing by clear and convincing evidence that Mother's failure to visit Ethan was willful. Tenn. Code Ann. § 35-1-113(c); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). We have thoroughly reviewed the record in this case and agree with Mother that it does not contain clear and convincing proof that Mother's failure to visit was willful.

As to the duty to visit, Mother's history of securing visitation with Ethan after he came into DCS custody, along with the nature and extent of DCS's involvement in securing the visitation and then having the home visitation revoked is clear and convincing proof that that Mother was aware of her duty to visit Ethan. *See In re M.L.P.*, 281 S.W.3d 387, 392 (Tenn. 2009) ("[P]arents should know that they have a responsibility to visit their children.").

In the absence of Mother or Father testifying regarding visitation, Unika B's testimony was the primary source of evidence relevant to Mother's visitation; much of her testimony in this regard, however, did not pertain to the four-month period at issue.[8]

---

[8] Unika B. testified that Mother was consistent with her visitation "the first . . . few times" but later was inconsistent at showing up for the supervised visitation. When asked whether Mother ever made any overt efforts to see Ethan, Unika B. testified: "No. There would be times she would text and say she would want to, and then you wouldn't hear from her again. She couldn't set anything up. Or she would show up and spend 30 minutes, and then have something else to do." When asked whether she read aloud to Ethan Mother's letters from jail that included messages to Ethan, Unika B. responded "In the beginning, yes, when she first went to jail. I didn't completely shut [Mother] out until she lost her 90-day home trial." Unika B. did not provide the dates of contact referenced in this testimony; considered in

6

Unika B. testified that Mother did not see Ethan again after the trial home visit ended in November 2014, and that that after Mother was released from incarceration on October 9, 2015, Mother made no contact with her or Ethan. On cross examination, however, she testified that since October 9, 2015, Mother "sent a text message that said[, 'T]ell Ethan I love him.['] But not, [']I'm coming to see him['] or anything like that[.]" This testimony establishes at most that Mother did not visit Ethan during the relevant period, an element of willfulness which Mother concedes on appeal.

As to the other elements of willfulness, i.e., that Mother had the capacity to visit and no justifiable excuse for failing to do so during the four month period preceding the filing of the petition, Petitioners have not met their burden. There is no proof as to Mother's capacity to visit or lack of an excuse for not visiting during that period, and the heightened standard or proof we apply in termination of parental rights cases will not allow us to infer that she had the capacity to visit or that she did not have a justifiable excuse for not doing so.[9] On the record presented, we cannot conclude that Mother's failure to visit was willful.

### B. Willful Failure to Support

"All parents have a duty to support their children." *In re M.J.B.*, 140 S.W.3d at 655; *see also* Tenn. Code Ann. § 34-1-102. A failure to support is "'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864. "A party seeking termination of parental rights must prove by clear and convincing evidence that the opposing party had the capacity to pay support but made no attempt to do so and did not possess a justifiable excuse." *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013) (citing *In re Audrey S.,* 182 S.W.3d at 864.).

---

context, and in light of other testimony, we cannot conclude that the testimony related to the December 24, 2015 to April 24, 2016 period.

[9] While not specifically relevant to this issue, there was other testimony that limits our willingness and ability to infer these necessary elements of willfulness. Robert Kelsie testified that Mother is an addict and that she had told him that "she's tried to see [Ethan], tried to visit with him." Mr. Kelsie testified that Mother went to rehab at the Mending Hearts program in Nashville "probably sometime in 2015 maybe" and stayed for "a significant amount of time" and "had done well throughout the program for several months." Similarly, Teresa Jackson, the DCS case manager, testified that Mother's case was transferred to her in December 2014 and that she closed the case in January 2016; that Mother was sent to a rehabilitation program "from incarceration" when Mr. Kelsie made the arrangements for Mother to go to the Mending Hearts program in Nashville; and that during the time she was assigned the case, Mother was not in compliance with the requirements of the permanency plan and continued to abuse drugs.

The trial court made the following findings of fact and conclusions of law relative to the ground of abandonment by failure to support:

> The second ground for termination is abandonment by willfully failing to support the child for the four months preceding the filing of the petition (T.C.A. § 36-1-102). It is undisputed from the evidence, there has been no support paid on Ethan since he was removed from the parents' care when he was about two and a half years old. Neither of these parents was incarcerated during this four-month period preceding the filing of the petition. [Father] had just gotten out of jail a few days before. [Mother] had been out for some two months. There is no proof in the record that either one of them were disabled from working or not working during this period. The Court finds the willful element has been established in that there has not been any support paid and there is no proof of any disability or impairment to prevent them from working during that four-month period. The Court therefore finds by clear and convincing evidence that the biological parents have abandoned the child by willfully failing to support him during the four (4) months preceding the filing of the petition.

The trial court did not address the elements of willfulness as it discussed its findings and holding pertinent to this ground. Later in the order, in its discussion of the best interest factors, the court considered whether the parents had paid support in accordance with the child support guidelines and "found [Mother and Father] were able-bodied and not handicapped, they had the ability to pay, they chose not to." Mother does not dispute that she did not provide support for Ethan; she argues that there is no evidence that she had the capacity to support Ethan, and that, consequently, this ground was not proven.

Unika B. provided the evidence as to this ground. When asked whether Mother ever brought clothes or diapers for Ethan or gave Unika B. money for formula or diapers, Unika B. testified that Mother did not. On cross examination, Unika B. testified that "the very first month [Mother and Father] were in [jail], they did hand me their food stamp card, but there was nothing on it. And they sent me WIC vouchers that were expired." Unika B. testified that after Mother's trial home visit was terminated in November 2014, Mother did not purchase Ethan any gifts, or send him cards, or send Unika B. any money for him. Unika B. also testified that after Mother was released from incarceration on October 9, 2015, Mother did not send birthday or Christmas presents or cards.

There was no proof introduced of Mother's income, employment (or willful unemployment), and expenses during the relevant time period from which we could

conclude that she had the capacity to pay support. Accordingly, there is no clear and convincing evidence to support the court's holding that the willful element was established. In the absence of such evidence, and in light of the heightened standard of proof applicable to this case, we are unable to conclude that the record leaves us with a "firm conviction" that Mother's failure to support was willful. *In re Alysia S.*, 460 S.W.3d at 572.

## III. CONCLUSION

Our disposition of the issues pertaining to the grounds upon which Mother's rights were terminated pretermits our consideration of the holding that termination of Mother's rights is in Ethan's best interest.

We reverse the judgment terminating Mother's parental rights and dismiss the petition. Our resolution of this case does not affect Petitioners' present custody of Ethan, as established by the Kinship Protective Order.

RICHARD H. DINKINS, JUDGE